IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| CHAD BARRY BARNES, | Case No. 19-cv-00210-DKW-RT |
|---|---|
| Appellant, | |
| v. | Bankr. No. 14-01475 |
| KRISTIN KIMO HENRY, | |
| Appellee. | |

| CHAD BARRY BARNES, | Case No. 19-cv-00216-DKW-RT |
|---|---|
| Appellant, | |
| v. | Bankr. No. 14-01520 |
| SEA HAWAII RAFTING, LLC, | |
| Appellee. | |

## ORDER AFFIRMING IN PART AND REVERSING IN PART ORDER OF THE BANKRUPTCY COURT

In these consolidated appeals, Appellant Chad Barry Barnes challenges an

order of the U.S. Bankruptcy Court for the District of Hawaiʻi, which, in pertinent

part, determined that the automatic stay (and subsequent discharge injunction)

barred Barnes from prosecuting unsecured, in personam claims against Appellee

Kristin Kimo Henry and his bankruptcy estate.[1] While Barnes' briefing on this matter is largely unhelpful, upon de novo review, the Court finds that the Bankruptcy Court erred with respect to one of the claims that Barnes seeks to bring against Henry – his claim for maintenance and cure. In doing so, the Bankruptcy Court characterized that claim as entirely unsecured. However, if Barnes is successful in showing that Henry should be held liable for the obligations of an alleged alter ego, Henry (like the alter ego) would be liable *in rem* to the extent the claim is secured by the value of the vessel in whose service Barnes was injured. As a result, this Court AFFIRMS IN PART AND REVERSES IN PART to the extent set forth and further explained below.

## I. **Procedural Background**[2]

The order at issue in these consolidated appeals originated not with the Bankruptcy Court, but from an admiralty court presiding over an admiralty case in this district. In that admiralty case, the court issued a "Directive" to the Bankruptcy Court requesting "clarification" of a decision by the Bankruptcy Court with respect to "whether, at this time, the automatic stay still bars Plaintiff Barnes

---

[1] Pursuant to Local Rule 7.1(c), the Court elects to decide these consolidated appeals without a hearing.

[2] The Court notes that there is a lengthy procedural background to the underlying bankruptcy and admiralty cases between the parties. While the Court does not recite that history in full herein, the Court is cognizant of the same and, to the extent relevant, it is mentioned herein.

from prosecuting unsecured in personam claims against Defendant Henry." Case No. 13-cv-00002-ACK-WRP, Dkt. No. 540 at 2 ("Directive").

In response to the Directive, the Bankruptcy Court issued the order at issue in these consolidated appeals.[3] Therein, the Bankruptcy Court determined that the automatic stay, and, when entered, the discharge injunction, barred Barnes from prosecuting unsecured, in personam claims against Henry and his bankruptcy estate. Dkt. No. 1-2 at 11. Among other things, the Bankruptcy Court found that Barnes had no maritime lien claims against Henry, and Barnes' claim for maintenance and cure was a prepetition claim pursuant to precedent from the Ninth Circuit Court of Appeals. *Id.* at 8-10.

On April 24, 2019, Barnes filed a notice of appeal of the foregoing order entered in Henry's bankruptcy proceeding ("the Henry Bankruptcy Appeal"). On the same day, Barnes filed a notice of appeal, appealing the identical order of the Bankruptcy Court filed in the bankruptcy proceeding of Sea Hawaii Rafting, LLC (SHR and, with Henry, "Appellees") ("the SHR Bankruptcy Appeal" and, with the Henry Bankruptcy Appeal, "the Bankruptcy Appeals"). Because the orders being appealed in the Bankruptcy Appeals involve common questions of law and fact,

---

[3]In fact, the Bankruptcy Court issued its responsive order twice, once in Henry's bankruptcy proceeding and once in the bankruptcy proceeding of Sea Hawaii Rafting, LLC. Because the order entered in each proceeding is identical, and primarily concerns Appellee Henry, this Court cites to only the order entered in Henry's bankruptcy proceeding.

3

and because consolidation would produce savings in time and effort, while causing no inconvenience, delay, or expense, the Court consolidated the Bankruptcy Appeals. *See* Dkt. No. 5. In the Court's order of consolidation, Barnes was instructed to clearly identify the issue or issues being appealed, clearly explain how the Bankruptcy Court purportedly erred with respect to the issue, and provide legal support for the Bankruptcy Court's purported error.

On August 16, 2019, Barnes filed his opening brief. Dkt. No. 10. Thereafter, Appellee SHR filed a response brief. Dkt. No. 11. Appellee Henry has filed no brief in these Bankruptcy Appeals. Finally, while Barnes had until November 4, 2019, to file a reply brief, Dkt. No. 9, no such brief was (or has been) filed.

## II. Legal Standard

This Court reviews a bankruptcy court's factual findings for clear error and its conclusions of law and determinations on mixed questions of law and fact de novo. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005); *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002).

## III. Discussion

The essence of these Bankruptcy Appeals is whether Barnes may pursue any claims against Henry or his bankruptcy estate, including claims that Barnes has

brought in his admiralty case. In his opening brief, although Barnes is represented by counsel, little effort is made to explain why the Bankruptcy Court erred in finding that Barnes could not pursue any claims against Henry. Instead, Barnes simply states that the Bankruptcy Court erred in one fashion or another. No attempt is made to explain *why* the purported ruling from the Bankruptcy Court was erroneous. This, of course, is far from helpful for this Court on appeal.

Nonetheless, the Court has conducted a de novo review of the order being appealed. Having done so, and as more fully explained below, this Court finds that, based upon the manner in which Barnes intends to hold Henry responsible for maintenance and cure–specifically, by piercing the corporate veil–if Barnes is successful in that endeavor, then Barnes would have a maritime lien claim against Henry. As a result, the Court finds that Barnes' claims are not necessarily entirely unsecured, in personam claims, as the Bankruptcy Court characterized them. Further, neither the automatic stay nor the discharge injunction would prohibit Barnes from prosecuting such a maritime lien claim against Henry should Barnes succeed in piercing the corporate veil.

The Court begins with the Directive's description of the claims that Barnes wishes to prosecute against Henry: "The Court notes that Plaintiff Barnes seeks to pierce the corporate veil and hold Defendant Henry personally liable for Defendant

5

SHR's maintenance and cure obligations, as well as pursue other tort claims against Defendant Henry." Directive at 2-3 (footnote omitted). In other words, Barnes wishes to prosecute claims for (1) maintenance and cure and (2) tort damages. Because Barnes' opening brief appears to focus entirely upon the claim for maintenance and cure, *see* Dkt. No. 10 at 9-12, this Court does likewise.[4] In addition, in that regard, the Directive states that Barnes seeks to hold Henry liable for maintenance and cure by piercing the corporate veil of SHR. This Court, thus, briefly sets forth pertinent law related to (1) maintenance and cure, and (2) piercing the corporate veil.

    First, maintenance and cure. "The ancient duty of the vessel and the shipowner to provide the sick and injured seaman with maintenance and cure arises from the contract of employment and the peculiar relationship existing between the seaman and the vessel." 2 Robert Force & Martin J. Norris, *The Law of Seamen* § 26:8 (5th ed. 2003). "It is an obligation imposed by the general maritime law on the shipowner and the vessel[,]" with maintenance and cure actions having "uniformly been brought against vessel owners because the cause of action was

---

[4] Although it does not appear to be disputed, at least not in Barnes' opening brief in these Bankruptcy Appeals, there can be little dispute that Barnes' prepetition *tort* claims are entirely unsecured. As a result, nothing in this Order should be construed as altering the Bankruptcy Court's determination that the automatic stay and the discharge injunction bar Barnes from prosecuting his prepetition *tort* claims against Henry or his bankruptcy estate. Certainly, Barnes' opening brief gives this Court no reason to do so.

initially implied from the employment contract between the shipowner and the seaman." *Id*. & n.2 (quotation omitted). Further, "[m]aintenance and cure is a means of giving a seaman relief by way of affording him medical care and treatment and reimbursing him for the cost of maintaining himself during the convalescent period. It is not an award of compensation for damages for the disability which he suffered." *Id*. § 26:14. "The rule is well settled that the seaman's right to maintenance and cure extends beyond the end of the voyage until the point where the maximum possible cure has been attained. The determination of the point or date where the maximum cure possible has been reached depends upon the facts of each particular case." *Id*. § 26:37. In addition, "a condition diagnosed as incurable may subsequently become curable as new medical techniques and scientific knowledge emerge. In such cases, the seaman is entitled to reassert his claim for cure to take advantage of these developments." *Id*. Further, "[a] seaman's right to maintenance and cure creates a maritime lien of high priority[,]" 1B *Benedict on Admiralty* § 42 (7th ed. rev. 2019) (footnotes omitted), with the lien being enforceable *in rem* against the vessel aboard which the seaman performed duties, *see* 8 Benedict on Admiralty §§ 7.01(A), 7.01(B), 7.01(C)(1)(d)(ii). "The amount of a judgment *in rem* is limited, however, to the

value of the vessel, or its proceeds, if sold, and its freight. To obtain a larger judgment, the vessel owner must be joined *in personam*." *Id*. § 7.01(A).

Second, piercing the corporate veil. In Hawai'i, "[w]hen a corporation is the mere instrumentality or business conduit of another corporation or person, the corporate form may be disregarded[,]" so as "to hold shareholders or other controlling individuals liable for corporate obligations." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 982 P.2d 853, 870 (Haw. 1999), *superseded by statute on other grounds as stated in Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 307 n.9 (Haw. 2010) (quotation omitted). Further, "[a] finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." *Id*. (quotation omitted). Put simply, "[i]f a natural person abuses the corporate form, it is well accepted that the court may place that … natural person in the corporation's shoes and hold that person liable as the corporation." *NML Capital Ltd. v. Republic of Argentina*, 2014 WL 3898021, *11 (D. Nev. Aug. 11, 2014).

With the foregoing in mind, the Court turns to whether Barnes may assert any part of his maintenance and cure claim against Henry. The Court finds that he can. As explained above, maintenance and cure is an obligation, in part, of the *shipowner* and secured by a lien on the *vessel* aboard which the seaman worked. Here, while Barnes asserts in his opening brief that the Bankruptcy Court erred in finding that Henry was not the shipowner, Barnes presents no basis for this Court to find any error, let alone clear error, in the Bankruptcy Court's factual finding that SHR was the shipowner.[5] Notwithstanding the foregoing, however, this Court disagrees with the Bankruptcy Court that Henry has no potential liability for the maintenance and cure claim to the extent the claim is secured by the relevant vessel. The reason is due to the manner in which Barnes seeks to impose liability upon Henry by piercing the corporate veil of SHR. As explained above, *if* Barnes is successful in piercing the corporate veil,[6] SHR's liability to pay maintenance and cure as the shipowner of the vessel will, in effect, become *Henry's* liability. *See Robert's Haw.*, 982 P.2d at 870. As a result, while the Bankruptcy Court may have accurately found that Henry never owned the vessel, *see* Dkt. No. 1-2 at 8, if

---

[5] For example, Barnes asserts that Henry "personally purchased" the vessel and performed "major modifications" and/or repairs on it. Dkt. No. 10 at 6. None of those allegations, however, mean that the vessel was not owned by SHR.

[6] Because it is an issue for the admiralty court to decide, this Court expresses no opinion and makes no findings with respect to the likelihood of Barnes' success in such an endeavor.

the corporate veil is pierced, Henry will be treated as if he had owned the vessel because he will stand in the shoes of SHR. Just like SHR, therefore, Henry would be liable *in rem* for satisfying the maintenance and cure claim to the extent it is secured by the relevant vessel.

That being said, as further explained above, the extent of the security a vessel provides may not be sufficient to satisfy the claims, such as maintenance and cure, asserted against it. *See* 8 *Benedict on Admiralty* § 7.01(A). That appears to be precisely the case here.[7] Thus, to obtain satisfaction of a judgment larger than the security provided by a vessel, a seaman must also join the shipowner *in personam*. *Id*. In the context of the facts here, however, a problem arises with holding Henry liable *in personam* for SHR's liability, in light of the bankruptcy discharge Henry has received.[8] More specifically, the Bankruptcy Court determined that Henry's *in personam* liability for maintenance and cure would be discharged because any such liability amounted to an unsecured, prepetition claim. Dkt. No. 1-2 at 8-11.

---

[7]In that regard, the Court takes judicial notice of (i) the Amended Findings of Fact and Conclusions of Law in the admiralty case, in which Barnes was awarded $279,406.12 (excluding attorney's fees and costs) for maintenance and cure, Case No. 13-cv-00002-ACK-WRP, Dkt. No. 446 (D. Haw. Oct. 5, 2018), and (ii) the sale of the vessel for $35,000 in SHR's bankruptcy proceeding, Case No. 14-bk-01520, Dkt. No. 253 (Bankr. D. Haw. Sep. 27, 2016).
[8]This is in contrast to Henry's potential *in rem* liability for maintenance and cure, which, as the Bankruptcy Court noted, is not affected by a bankruptcy discharge. *See* Dkt. No. 1-2 at 7 n.19 (citing 11 U.S.C. § 524(a)(2)).

As an initial matter, it is important to note that, generally speaking, unsecured, prepetition debts are discharged in an individual bankruptcy, such as Henry's, unless a discharge exception applies. *See Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633, 638 (9th Cir. 2018) (concluding that a debt for homeowners association assessments "arose pre-petition and is dischargeable under Section 1328(a), unless the Bankruptcy Code provides an exception to discharge."). Therefore, to resolve whether Barnes may pursue any *in personam* liability for maintenance and cure against Henry, three questions must be asked: is the liability (1) an unsecured, (2) prepetition debt (3) subject to discharge?

The first question is straightforward. To the extent the value of the relevant vessel fails to satisfy the total amount of maintenance and cure owed to Barnes, necessarily, any remaining liability is *unsecured* by the vessel (or anything else). As a result, any *in personam* liability would be unsecured.

The second question is the principal focus of the Bankruptcy Court's order at issue in these Bankruptcy Appeals. The Bankruptcy Court's response was that maintenance and cure was a prepetition debt. In light of Ninth Circuit precedent, this Court agrees. Specifically, the Ninth Circuit has held that "'a claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim….'" *In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005) (quoting *O'Loghlin*

*v. Cty. of Orange*, 229 F.3d 871, 874 (9th Cir. 2000)) (alteration omitted). Under this standard, Barnes' maintenance and cure is undoubtedly a prepetition debt because the events giving rise to that claim–i.e., Barnes' injury–undisputedly took place *before* Henry filed for bankruptcy protection. *See* 1B *Benedict on Admiralty* § 42 ("It has long been a rule of maritime law that when a seaman becomes ill or suffers an injury while in the service of a vessel, he is entitled to maintenance and cure at the expense of the shipowner."). The "fair contemplation" principle, upon which the Bankruptcy Court relied, leads to the same conclusion. Notably, in *Goudelock*, the Ninth Circuit concluded that the post-petition assessment of homeowners association fees constituted a prepetition debt because the homeowners association "fairly could have contemplated" that the monthly assessments would continue to accrue. 895 F.3d at 638. The Ninth Circuit further explained that the assessments constituted a prepetition debt because the event giving rise to the claim–taking title to a condominium unit–occurred prepetition. *Id*. This Court can see no reasonable way of distinguishing liability for maintenance and cure, even if said liability is only imposed post-petition and/or continues to arise post-petition, from homeowners association fees that are assessed post-petition, when both debts are based upon events taking place

12

prepetition.[9]  As a result, the Court finds that any *in personam* liability for maintenance and cure is a prepetition debt.

The final question is whether any *in personam* liability for maintenance and cure is excepted from discharge under the Bankruptcy Code.  *See Goudelock*, 895 F.3d at 638-639.  In his opening brief, Barnes makes no reasonable attempt to explain why a discharge exception applies here.  Barnes appears to assert that maintenance and cure should be treated "like welfare payments" or "like a child care payment."  Welfare payments are not excepted from discharge, however. *See id.* at 639 n.4 (identifying the debts excepted from discharge in a Chapter 13 proceeding).  As for child care payments, even if the Court was willing to assume that Barnes intends this to mean treating maintenance and cure like a domestic support obligation–a debt that *is* excepted from discharge–the problem is that "'exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.'"  *Id.* at 639 (quoting *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992)).  Attempting to shoehorn maintenance and cure into the concept

---

[9]None of Barnes' arguments challenging the Bankruptcy Court's determination in this regard are helpful.  Notably, although Barnes asserts that the Bankruptcy Court erred, *see* Dkt. No. 10 at 6-9, 11-12, at no point does Barnes explain *how* the Bankruptcy Court erred.  To the extent an explanation is provided through the guise of Barnes' procedural due process argument, *see id.* at 9-10, the Court rejects that argument.  Simply put, following all of the opportunities with which Barnes has been provided to present his arguments, whether before the Bankruptcy Court, various judges of this District, or the Ninth Circuit, it is hard to comprehend how Barnes could believe he has not been provided *procedural* due process.  While Barnes may not be happy with the end result of the procedures he has received, that does not mean he has not received them.

of domestic support would ignore that principle. Therefore, the Court does not find that maintenance and cure is excepted from discharge under Chapter 13 as a domestic support obligation.[10] Nor does the Court find any other discharge exception applicable to *in personam* liability for maintenance and cure.

In summary, first, to the extent Barnes is successful in piercing the corporate veil against Henry, he **may** attempt to hold Henry responsible for SHR's obligation to pay maintenance and cure up to the value of the relevant vessel. Put another way, to the extent Barnes is able to pierce SHR's corporate veil, he **may** pursue an *in rem* claim against Henry. Second, to the extent the value of the relevant vessel is insufficient to satisfy the total amount of maintenance and cure awarded to Barnes, Barnes may **not** pursue an *in personam* claim against Henry because such liability is an unsecured, prepetition debt that is subject to discharge under the

---

[10]In addition, even if the Court was willing to examine all of the other exceptions to discharge *sua sponte*, none of them aid Barnes in finding an applicable discharge exception. *See Goudelock*, 895 F.3d at 639 n.4. Maintenance and cure does not relate to the curing of a default with respect to a payment due under a Chapter 13 plan. Maintenance and cure is not a tax or a student loan. It also does not relate to a valuable obtained by fraud, embezzlement or larceny, or restitution arising from a criminal conviction. Further, there is no argument here that Henry's potential liability for maintenance and cure was an unscheduled debt. Also, here, the maintenance and cure owed to Barnes is not an obligation resulting from a DUI. The only remaining exception is for damages awarded in a personal injury action due to willful or malicious conduct. While perhaps the most arguably relevant, given that maintenance and cure can arise due to the injury of a seaman, liability for maintenance and cure is entirely unconcerned with the culpability of the shipowner. *See* 2 *The Law of Seamen* § 26:8 ("It [maintenance and cure] does not rest upon negligence or culpability on the part of the owner or master…."); 1B *Benedict on Admiralty* § 42 ("Fault concepts are alien to the maintenance and cure remedy…."). Therefore, this exception also does not appear to apply here.

Bankruptcy Code.  Barnes may also **not** pursue any unsecured, *prepetition* tort claims against Henry, as Barnes has made no attempt in his briefing in these Bankruptcy Appeals to explain why any debts related to those claims are not subject to discharge.  This Court leaves for the admiralty court to determine whether SHR's corporate veil should be pierced and the value of the relevant vessel.

**IV.    Conclusion**

For the reasons set forth herein, the Bankruptcy Court's Response to the United States District Court's Directive in Case No. 14-1475 and Case No. 14-1520 is AFFIRMED IN PART AND REVERSED IN PART.

IT IS SO ORDERED.

Dated: January 13, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Chad Barry Barnes v. Kristin Kimo Henry/Chad Barry Barnes v. Sea Hawaii Rafting, LLC*; Civil No. 19-00210 DKW-RT and Civil No. 19-00216 DKW-RT; **ORDER AFFIRMING IN PART AND REVERSING IN PART ORDER OF THE BANKRUPTCY COURT**